IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | | |
|---|---|---|
| TODRICK MORRIS, PRO SE, <br> TDCJ-CID No. 854732, <br><br> Plaintiff, <br><br> v. <br><br> AUGUSTINE MELENDREZ ET AL., <br><br> Defendants. | § § § § § § § § § § | 2:15-CV-0128 |

### REPORT AND RECOMMENDATION TO GRANT DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, DENY PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT, AND DENY PLAINTIFF'S REQUESTS FOR INJUNCTIVE RELIEF

Before the Court is Defendants' Motion for Summary Judgment filed August 19, 2016. Defendants MELENDREZ, ANDERSON, MADRID, and FLANAGAN filed a joint motion for summary judgment [D.E. 33]. On November 7, 2016, plaintiff filed a response to defendants' motion for summary judgment and also requested summary judgment in his favor [D.E. 36]. The Court has reviewed all the summary judgment evidence and arguments of the parties.

### OVERVIEW OF THE CASE

On January 6, 2015 plaintiff told defendants ANDERSON and MADRID he was ill and needed to be seen by the medical department. Plaintiff claimed he was deliberately poisoned by TDCJ staff through his food, and he was experiencing vomiting, chest pains, and other ailments. In his complaint, plaintiff alleges ANDERSON and MADRID refused to notify medical of his condition and these defendants warned him if he "took control" of the food tray slot in order to demand medical attention, he would be gassed, his property would be seized, and defendants would turn the water off in his cell.

Later the same day (January 6), TDCJ staff approached plaintiff's cell in order to deliver plaintiff's prescribed medication. Defendant ANDERSON was videotaping the entire episode.

The competent summary judgment evidence shows that TDCJ regularly videotaped interactions with the plaintiff involving delivery of items through his food tray slot because of the numerous grievances filed by plaintiff against TDCJ personnel. The entire use of force against plaintiff was recorded, with a 20 second break after the second use of force was deployed to change the battery in the recording device. The use of force tapes are part of the summary judgment evidence, attached to defendants' motion.

During the delivery of his medication, plaintiff rushed from the back of the cell (where he was ordered to wait) and stuck his arm through the food tray slot, thereby "taking control" of the slot and refusing to withdraw his arm to allow the slot to close. Plaintiff was told several times to remove his arm from the slot or an extraction team would be called according to the TDCJ use of force policy. Notwithstanding the admonition, plaintiff refused to remove his arm and demanded to see medical personnel. Defendant ANDERSON told plaintiff he would inquire about his medical situation if he removed his arm, but plaintiff persisted in ignoring commands to remove his arm. Defendant ANDERSON called for an extraction and use of force team to come to the cell. Along with the extraction team, TDCJ Nurse WILLIAMS came to the cell. Nurse WILLIAMS was not allowed to examine plaintiff for medical complaints while he kept control of the food tray slot for safety reasons. Plaintiff continued to demand medical care.

Defendant MADRID warned plaintiff again to relinquish control of the food tray slot, but plaintiff continued to refuse. While outside of the cell, defendant MADRID deployed a single burst of chemical agents through the cell to regain control of the food tray slot. After the chemical agent was deployed, plaintiff did remove his arm from the slot. Plaintiff was ordered to comply with a strip search, which he initially refused. Plaintiff eventually complied with the search. Plaintiff was handcuffed in order to remove him from his cell to confiscate his property to determine if plaintiff had contraband items constituting a threat to personnel or himself. After he was removed from the cell and his property was seized, he was ordered to stand and walk back into his cell. After initially standing, the plaintiff appears to deliberately drop to his knees,

then lay flat on the ground and refuse to rise and walk into his cell. Although he was handcuffed at the time, plaintiff continued to be noncompliant with TDCJ orders to stand and walk to his cell. In his response to the motion for summary judgment, plaintiff claims he was weak and dizzy from his ailment and was suffering chest pains and could not rise on his own. While on the ground, however, he was responding to Nurse WILLIAMS's questions and stated he was not injured by the original use of force. He did continue to complain of chest pain during this time. Nurse WILLIAMS determined defendant's refusal to comply with orders was not the result of a medical condition, and plaintiff was given several opportunities to comply with the order to rise. In his response to defendants' summary judgment motion, plaintiff states some individuals (presumably himself) have a high pain tolerance and do not react to chest pains or other ailments the same way as other individuals and plaintiff alleges Nurse WILLIAMS was unable to properly determine plaintiff had the ability to comply with commands.

Defendant MADRID, after giving plaintiff opportunity to comply with orders, once again administered chemical agents on the plaintiff while outside the cell. Plaintiff was prone on the ground and handcuffed at the time of the application, but was continuing to be noncompliant with TDCJ orders to rise and reenter his cell at the time. After this second use of force, plaintiff was repeatedly asked to rise and refused and he was eventually carried back into his cell and questioned again by Nurse WILLIAMS.

## CLAIMS AND REQUESTS FOR RELIEF

Plaintiff TODRICK MORRIS, acting pro se and while a prisoner incarcerated in the Texas Department of Criminal Justice, Correctional Institutions Division, has filed suit pursuant to Title 42, United States Code, section 1983 complaining against defendants MELENDREZ, ANDERSON, MADRID, and FLANAGAN and was granted permission to proceed in forma pauperis. Plaintiff additionally filed suit against defendant WILLIAMS, but these claims were dismissed May 17, 2016, without prejudice for failure to state a claim. Plaintiff has filed several

requests to amend his suit, but these requests have been denied. Plaintiff's pending claims involve deliberate indifference to medical needs, excessive force, and theft of personal property.

Plaintiff complains defendants ANDERSON and MADRID acted with deliberate indifference to his medical needs when they were informed of plaintiff's "poisoning" and medical needs on January 6, 2015 and refused to summon immediate medical care.

Plaintiff claims defendant MADRID used excessive force by applying a chemical agent to his face after he started complying with orders of TDCJ officials. Plaintiff also alleges MADRID unlawfully seized his property after the use of force.

Plaintiff claims defendant ANDERSON had a role in the use of excessive force against him. He does not specifically articulate what role ANDERSON had in the use of force.

Plaintiff claims defendant MELENDREZ had a role in denying him medical care and in the use of force against him. Plaintiff claims defendant FLANAGAN also had a role in denying him medical care and was present during the use of force against plaintiff.

Plaintiff requests monetary relief of $25,000 from each defendant.

## STANDARD OF REVIEW

Summary judgment may be granted if there is "no genuine issue of material fact and ... the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986); *Guthrie v. Tifco Indus.*, 941 F.2d 374, 376 (5th Cir. 1991). A dispute about a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Liberty Lobby*, 477 U.S. at 255, 106 S.Ct. At 2510. To avoid summary judgment, the nonmoving party must submit admissible evidence which creates a fact issue concerning the existence of every essential component of that party's case. Unsubstantiated assertions of an actual dispute will not suffice. *Celotex Corp. V. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553-54, 91 L.Ed.2d 265 (1986). An opposing party cannot establish a genuine issue of material fact by resting on the mere allegations of the pleadings. *Hulsey v. State of Texas*, 929 F.2d 168, 170 (5th

Cir. 1991). A non-movant cannot manufacture a factual dispute by asking the Court to draw inferences contrary to the evidence. *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

Defendants have asserted the defense of qualified immunity. Generally, evidence must be viewed in the light most favorable to the plaintiff if there is a genuine dispute as to the facts; however, when a plaintiff's view of events is contradicted by evidence in the record, the Court need not blindly accept plaintiff's view of the facts. In *Scott v. Harris*, 550 U.S. 372, 380–81, 127 S.Ct. 1769, 167 L.Ed.2d 686 (2007) the Supreme Court held that "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Id.* at 380. The court could instead rely on the admissible evidence in evaluating the motion for summary judgment rather than the "visible fiction" offered by the non-moving party. *Id.* at 381. The same evidentiary weight applies when the court is determining whether the plaintiff can overcome a plea of qualified immunity at the pleading stage before discovery or other court proceedings or if the court is evaluating the case for frivolousness under 28 U.S.C. § 1915(e)(2)(B)(i).

Defendants FLANAGAN and MELENDREZ also claim plaintiff failed to exhaust his administrative remedies against them. A plaintiff's complaint should be dismissed for failure to exhaust his administrative remedies under 42 U.S.C. § 1997e(a), as amended in 1996 by the Prisoner Litigation Reform Act (PLRA), if he or she failed to pursue all administrative remedies prior to bringing a civil action challenging prison conditions. *See Porter v. Nussle*, 534 U.S. 516, 532, 122 S.Ct. 983, 152 L.Ed.2d 12, (2002) (exhaustion requirement "applies to all inmate suits about prison life, whether [those suits] involve general circumstances or particular episodes, and whether [those suits] allege excessive force or some other wrong"); *Booth v. Churner*, 532 U.S. 731, 741, 121 S.Ct. 1819, 149 L.Ed.2d 958, (2001) (mandatory exhaustion requirement must be strictly observed "regardless of the relief offered through administrative procedures").

Defendants also assert Eleventh Amendment immunity. The principle of state-sovereign immunity generally precludes actions against state officers in their official capacities. *See Edelman v. Jordan*, 415 U.S. 651, 663-69, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974). The exception to this rule is contained in the *Ex parte Young* doctrine. Under *Ex parte Young*, "a federal court, consistent with the Eleventh Amendment, may enjoin state officials to conform their future conduct to the requirements of federal law." *Quern v. Jordan*, 440 U.S. 332, 337, 99 S.Ct. 1139, 59 L.Ed.2d 358 (1979). Insomuch as the plaintiff is suing for monetary relief against defendants in their official capacities, his suit should be dismissed based on eleventh amendment immunity.

## THE LAW AND ANALYSIS OF DELIBERATE INDIFFERENCE AND MEDICAL CLAIMS

"[D]eliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain' . . . proscribed by the Eighth Amendment." Such indifference may be "manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." *Estelle v. Gamble*, 429 U.S. 97, 104, 97 S.Ct. 285, 291, 50 L.Ed.2d 251 (1976). Deliberate indifference is defined as a failure to act where prison officials have knowledge of a substantial risk of serious harm to inmate health or safety. *Farmer v. Brennan*, 511 U.S. 825, 114 S.Ct. 1970, 1981, 128 L.Ed.2d 811 (1994).

Nevertheless, not every claim of inadequate or improper medical treatment is a violation of the Constitution, *Estelle v. Gamble*, 429 U.S. 97, 105, 97 S.Ct. 285, 291, 50 L.Ed.2d 251 (1976); nor does a disagreement with a doctor over the method and result of medical treatment require a finding of deliberate indifference. *Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985). Merely alleging that a prison doctor should have undertaken additional diagnostic measures or utilized an alternative method of treatment does not elevate a claim to constitutional dimension. *Varnado v. Collins*, 920 F.2d 320, 321 (5th Cir. 1991). The plaintiff is not entitled to the "best" medical treatment available. *McMahon v. Beard*, 583 F.2d 172, 174 (5th Cir.1978); *Irby v. Cole*,

No. 4:03cv141-WHB-JCS, 2006 WL 2827551, at *7 (S.D.Miss. Sept.25, 2006). "Deliberate indifference exists wholly independent of an optimal standard of care." *Gobert v. Caldwell*, 463 F.3d 339, 349 (5th Cir.2006). As long as medical personnel exercise professional medical judgment, their behavior will not violate a prisoner's constitutional rights. *See Youngberg v. Romeo*, 457 U.S. 307, 322-23, 102 S.Ct. 2452, 2461-62, 73 L.Ed.2d 28 (1982). A prisoner's, or some other layperson's, disagreement with prison officials regarding medical treatment is insufficient to establish an unconstitutional denial of medical care. *Norton v. Dimanzana*, 122 F.3d 286, 292 (5th Cir. 1997). Further, negligent medical care will not support a claim under section 1983. *Mendoza v. Lynaugh*, 989 F.2d 191, 195 (5th Cir. 1993).

Plaintiff claims on January 6, 2015, he alerted defendants MELENDREZ, MADRID, ANDERSON, and FLANAGAN to his medical needs. Specifically, plaintiff claims he was poisoned with his food tray and was vomiting and experiencing chest pains. Plaintiff claims defendants ignored his request, laughed at him and "told plaintiff that if he took control of the foodslot[1] [sic] later in the day ... to try and get medical care they would take away all of his property, gas him, and turn off the water." [Complaint, p. 5]. Plaintiff was scheduled to be seen the following day at the medical department, but wanted to be seen earlier. Later that same day, while medications were being delivered, plaintiff took control of the food tray slot while medication was being dispensed by sticking his arm through the slot. Plaintiff acknowledges he failed to comply with orders to remove his arm and surrender control of the food tray slot, but argues he did so to receive medical treatment. According to his own complaint, he was warned against this behavior and knew it constituted acting out against TDCJ officials.

---

[1] A review of the summary judgment evidence, including the use of force videos attached as Exhibits A and B, allow to Court to determine that the "foodslot" referred to by plaintiff is an opening in a prison cell door, also called a food tray slot by TDCJ officials, where food, medications, or other items can be passed from TDCJ personnel to the prisoner without opening the cell door. Apparently the slot can be opened from the outside only, but once it is opened it cannot be closed if an object is stuck into the slot.

Although plaintiff references or makes claims of an injury to his pinkie finger following the use of force and as a result of the use of force, he makes no claims of injuries suffered as a result of the failure of named defendants to provide him with immediate care prior to the use of force. Furthermore, plaintiff's conclusory allegations that defendants conspired to deny him care are contradicted by several things. First, defendant ANDERSON offers to notify medical personnel that plaintiff is unwell if he relinquishes control of the foot tray slot. Second, Nurse WILLIAMS was brought, along with the extraction team, to assess plaintiff's condition. Third, the video shows Nurse WILLIAMS stayed behind after the use of force to continue to try to assess the plaintiff's medical issues, although he refused at that time to answer her questions. Also, in plaintiff's Step 1 grievance attached to his complaint, he states that his "ailment" wore off later that day, apparently without treatment. It is unclear whether the ailment plaintiff refers to is the alleged poisoning or the chest pains or vomiting. Plaintiff claims in his response to defendants' motion he suffered from blurry vision for weeks following the incident.

There is no competent summary judgment evidence that reflects MELENDREZ, MADRID, ANDERSON, or FLANAGAN acted with deliberate indifference toward the plaintiff's medical needs. In fact, plaintiff admits in several of his filings that prior to the use of force he was seen by Nurse WILLIAMS and his medical situation was not deemed to be an emergency. Plaintiff also twice acknowledges he was warned against the very behavior that resulted in a use of force against him. It appears plaintiff threatened the behavior that led to the use of force when he was requesting medical care and was not taken immediately to the medical unit, but instead was seen by a nurse outside his cell. The fact that he was seen by a nurse at his cell, by his own admission, does not support a claim of deliberate indifference against the correctional officer defendants.

Plaintiff states that his original ailment, related to allegedly poisoned food, wore off without treatment later that day. A delay in medical care will only constitute an Eighth Amendment violation if such delay results in substantial harm to the plaintiff. *Mendoza v.*

*Lynaugh*, 989 F.2d 191, 193 (5th Cir. 1993). Plaintiff has not articulated how the delay in bringing Nurse WILLIAMS to the cell resulted in substantial harm to the plaintiff. Plaintiff also failed to articulate in his complaint how MELENDREZ or FLANAGAN were responsible for any delay in medical care.

The Court RECOMMENDS that plaintiff's claims of deliberate indifference against all defendants be dismissed without prejudice for failure to state a claim and with prejudice on the grounds of qualified immunity.

## FAILURE TO EXHAUST

Defendants have properly raised the issue of failure to exhaust administrative remedies in regards to plaintiff's claims against defendants MELENDREZ and FLANAGAN in their motion for summary judgment. *See Dillon v. Rogers*, 596 F.3d 260, 266 (5th Cir. 2010). Plaintiff has attached the Step 1 and Step 2 grievances he filed as a result of incidents that occurred on January 6, 2015. In those grievances, he argues that MADRID and ANDERSON were told of his medical needs and that MADRID and ANDERSON had responsibility in the use of excessive force against the plaintiff. Plaintiff makes no mention of MELENDREZ or FLANAGAN in his grievances.

"The amount of information necessary [in a grievance] depends on the type of problem about which the inmate is complaining." *See Bisby v. Garza*, 342 Fed. Appx. 969, 972 (5th Cir. 2009) (citing *Johnson v. Johnson*, 385 F.3d 503, 517 (5th Cir. 2004)). The "primary purpose of a grievance is to alert prison officials to a problem, not to provide personal notice to a particular official that he may be sued," but a grievance usually requires the plaintiff to "identify individuals who are connected with the problem." *Johnson*, 385 F.3d at 522.

The Court finds plaintiff's grievance notified TDCJ of plaintiff's complaints regarding the excessive use of force, deliberate indifference, and property claims because all three were mentioned in the grievances filed. However, plaintiff has failed to articulate, and no competent summary judgment evidence shows, how MELENDREZ or FLANAGAN were involved in any

way in the delay of medical care provided to the plaintiff. As to excessive force, plaintiff argues in his response to the defendant's summary judgment motion defendant MELENDREZ was present during the use of force, just outside of camera range, and defendant FLANAGAN was also present.

Although the Court does not find plaintiff failed to exhaust his administrative remedies, the claims against MELENDREZ and FLANAGAN do not present facts to show their personal involvement in the use of force claims asserted by plaintiff.

## PLAINTIFF'S CLAIMS OF EXCESSIVE FORCE

On January 6, 2015 TDCJ used two separate applications of a chemical agent against the plaintiff in response to plaintiff's failure to comply with TDCJ orders. The Court analyzes both applications of force (both times the chemical agent was deployed by defendant MADRID) separately to determine if either use was "repugnant to the conscience" or "excessive."

Plaintiff admits he was warned against the behavior he exhibited that led to the first application of chemical agents. Further, plaintiff does not claim the initial use of force against him was excessive, as he admits he was non-compliant with TDCJ orders. The Court agrees that the first application of chemical agents was in response to the noncompliance of the plaintiff in refusing to follow orders and instructions given by officers and was justified.

Plaintiff argues defendant MADRID used a chemical agent on the plaintiff when plaintiff was already handcuffed and had become compliant. Plaintiff states no fact to support his speculative allegation that MADRID's use of the chemical agent was solely for the purpose of causing harm to the plaintiff or in retaliation for the prior bad behavior.

Plaintiff was sprayed with a chemical agent a second time during the use of force, but plaintiff, himself, has stated it was applied for failing to comply with TDCJ orders. He states the second chemical application was unnecessary because he could not comply with orders at that time and was on the ground. However, the video shows plaintiff was responsive and able to answer Nurse WILLIAMS's questions about injuries. Plaintiff, after being handcuffed, appears

on the video to deliberately fall to his knees first, then prostrate himself on the ground and refuse to get up and reenter his cell. Nurse WILLIAMS determined there was no medical reason for plaintiff's continued noncompliance with TDCJ orders. In his response to defendants' summary judgment motion, plaintiff implies he has a high pain tolerance and did not react to chest pains or other ailments the same way as other individuals and plaintiff alleges Nurse WILLIAMS was unable to properly determine plaintiff had the ability to comply with commands. However, the Court must view the use of force in context to determine if the second application of force in this case could be justified. In situations such as this, "[prison officials] are entitled to wide-ranging deference." *See Baldwin v. Stalder*, 137 F.3d 836, 840 (5th Cir.1998) (finding that the use of mace to quell a disturbance caused by inmates on a bus did not constitute excessive force). "The amount of force that is constitutionally permissible ... must be judged by the context in which that force is deployed." *Id.* (quoting *Ikerd v. Blair*, 101 F.3d 430, 434 (5th Cir.1996)). The use of force does not constitute cruel and unusual punishment when reasonably necessary to subdue a recalcitrant prisoner. *Clemmons v. Greggs*, 509 F.2d 1338, 1340 (5th Cir.1975).

While striking or using chemical agents on an inmate who may have been unruly but who had clearly ceased being noncompliant could present a fact issue, plaintiff MORRIS has not shown that he had ceased his disruptive behavior, and MADRID's second application of a chemical agent does not meet the standard of force which is "repugnant to the conscience of mankind." *Whitley v. Albers*, 475 U.S. 312, 327, 106 S.Ct. 1078, 1088, 89 L.Ed.2d 251 (1986). MADRID took the actions necessary to bring plaintiff into compliance so he could be controlled. The use of force by MADRID was conducted for the purpose of maintaining or re-establishing security and discipline, not for the sadistic and malicious purpose of causing harm. *Hudson v. McMillian*, 503 U.S. 1, 112 S.Ct. 995, 1000, 117 L.Ed.2d 156 (1992).

To the extent plaintiff is attempting to argue that no additional force should have been utilized because he was already handcuffed, plaintiff's allegations show he continued to be argumentative and noncompliant with orders, apparently without cause. The Fifth Circuit has

Page 11 of 15
2:15-CV-0128.MORRIS.GRANTMSJ: 4

long recognized that simply handcuffing a suspect does not instantly and completely eliminate all risks that the suspect will flee or do harm to others. *United States v. Sanders*, 994 F.2d 200, 209 (5th Cir. 1993). As noted by the Sanders Court:

> Handcuffs are a temporary restraining device; they limit but do not eliminate a person's ability to perform various acts [citation omitted.] They obviously do not impair a person's ability to use his legs and feet, whether to walk, run, or kick. Handcuffs do limit a person's ability to use his hands and arms, but the degree of the effectiveness of handcuffs in this role depends on a variety of factors, including the handcuffed person's size, strength, bone and joint structure flexibility, and tolerance of pain. Albeit difficult, it is by no means impossible for a handcuffed person to obtain and use a weapon concealed on his person or within lunge reach, and in so doing to cause injury to his intended victim, to a bystander, or even to himself. Finally, like any mechanical device, handcuffs can and do fail on occasion.

*Id.* at 209.

Finally, following the first use of force plaintiff stated that he was not injured, but that his chest continued to hurt. In his complaint, plaintiff states that his "ailments" subsided that same day after the use of force, and plaintiff, after the second application of force, refused to answer questions regarding any injuries. In his response to the defendants' summary judgment motion, plaintiff claims he suffered from blurry vision and a pinkie injury as a result of the use of force. However, it is unclear if this was from the first or second application of chemical agents or the removal from his cell or restraining him when he dropped to his knees and laid on the ground. While an injury is not required for a showing of excessive force, in these cases when some force is necessitated by the plaintiff's own actions, the Court must examine the amount of force used to determine if this force went beyond the force needed to restore order. Often times, the extent of injuries suffered by a plaintiff as a result of force can help the Court determine if the level of force used was appropriate or inappropriate. Here, the temporary discomfort caused by the second application of chemical agents is not inappropriate in the context of MADRID's attempt to restore order. Plaintiff never articulates how his pinkie was injured in his complaint.

## PLAINTIFF'S CLAIMS OF THEFT OF PROPERTY

Due process is satisfied when the plaintiff is afforded ample notice and sufficient opportunity to object to the confiscation of his property, such as by way of the prison grievance system. *Allen v. Thomas*, No. H-02-3132, 2005 WL 2076033 at *9 (S.D.Tex. Aug.26, 2005). Post-deprivation proceedings such as TDCJ's grievance procedures are adequate to satisfy the Due Process Clause with respect to confiscation of property pursuant to prison regulations. *McQueen v. Vance*, 68 F.3d 471, 1995 WL 581861, *1 (5th Cir. Sept. 20, 1995) (unpublished) (citing *McBride v. Collins*, No. 93-7468, slip op. at 3 (5th Cir. Jan. 19, 1994) (unpublished); *Allen v. Thomas*, No. H-02-3132, 2005 WL 2076033 at *9 (S.D.Tex. Aug.26, 2005). Where a section 1983 plaintiff alleges he has been deprived of property without due process of law, by the negligent or intentional actions of a state officer that are "random and unauthorized," a tort cause of action in state law is sufficient to satisfy the requirements of due process. *Hudson v. Palmer*, 468 U.S. 517, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984).

Plaintiff's property was temporarily seized in response to plaintiff's conduct on January 6, 2015. Plaintiff alleged in his Step 1 grievance that defendant MADRID wrongfully seized his personal property in retaliation, as the property was not used in the plaintiff's noncompliance. However, plaintiff makes no further claims regarding unreturned property after the security check was conducted and was afforded sufficient due process through the grievance investigation process regarding his property claim.

Plaintiff's section 1983 property claim against defendant MADRID lacks an arguable basis in law and is frivolous. *Neitzke v. Williams*, 490 U.S. 319, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989).

## CONCLUSION

It is the RECOMMENDATION of the Magistrate Judge to the United States District Court that the Defendants' Motion for Summary Judgment be GRANTED. Further, it is the RECOMMENDATION of the Magistrate Judge that the plaintiff's motion for summary

judgment, contained in his response to defendants' motion, be DENIED. Pursuant to Title 28, United States Code, sections 1915A and 1915(e)(2), as well as Title 42, United States Code, section 1997e(c), it is the RECOMMENDATION of the Magistrate Judge to the United States District Judge that the Civil Rights Claims filed pursuant to Title 42, United States Code, Section 1983, by plaintiff TODRICK MORRIS against defendants MELENDREZ, MADRID, ANDERSON, and FLANAGAN be DISMISSED WITH PREJUDICE ON THE GROUND OF QUALIFIED IMMUNITY and DISMISSED WITHOUT PREJUDICE FOR FAILURE TO STATE A CLAIM and his property claim against MADRID be DISMISSED WITH PREJUDICE AS FRIVOLOUS.

INSTRUCTIONS FOR SERVICE

The United States District Clerk is directed to send a copy of this Report and Recommendation to each party by the most efficient means available.

IT IS SO RECOMMENDED.

ENTERED this _3rd_ day of March, 2017.

CLINTON E. AVERITTE
UNITED STATES MAGISTRATE JUDGE

## * **NOTICE OF RIGHT TO OBJECT** *

Any party may object to these proposed findings, conclusions and recommendation.  In the event parties wish to object, they are hereby NOTIFIED that the deadline for filing objections is fourteen (14) days from the date of filing as indicated by the "entered" date directly above the signature line.  Service is complete upon mailing, Fed. R. Civ. P. 5(b)(2)©, or transmission by electronic means, Fed. R. Civ. P. 5(b)(2)(E).  **Any objections must be filed on or before the fourteenth (14th) day after this recommendation is filed** as indicated by the "entered" date. *See* 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b)(2); *see also* Fed. R. Civ. P. 6(d).

Any such objections shall be made in a written pleading entitled "Objections to the Report and Recommendation."  Objecting parties shall file the written objections with the United States District Clerk and serve a copy of such objections on all other parties.  A party's failure to timely file written objections to the proposed findings, conclusions, and recommendation contained in this report shall bar an aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings, legal conclusions, and recommendation set forth by the Magistrate Judge in this report and accepted by the district court.  *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1), *as recognized in ACS Recovery Servs., Inc. v. Griffin*, 676 F.3d 512, 521 n.5 (5th Cir. 2012); *Rodriguez v. Bowen*, 857 F.2d 275, 276-77 (5th Cir. 1988).